**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| YVETTE HARDIE, an individual and as Guardian Ad Litem of GEOFFERY HARDIE, GEOFFERY HARDIE, a minor,<br><br>    Plaintiffs,<br><br>vs.<br><br>CHURCHILL COUNTY SCHOOL DISTRICT, et al.,<br><br>    Defendants. | 3:07-CV-310-RAM<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is Defendant Churchill County School District's ("CCSD") Motion for Summary Judgment. (Doc. #18.) Plaintiff has opposed (Doc. #22) and Defendants have replied (Doc. #25). Having read the papers, and carefully considered the arguments and the relevant legal authority, and with good cause appearing, the court grants the motion.

## I. BACKGROUND

This suit was brought by Yvette Hardie ("Plaintiff"), individually and on behalf of her son, Geoffery Hardie ("Hardie"), who was expelled from Churchill County High School after bringing a knife with him during a school field trip. Plaintiff has filed this action against the school district and various school officials (collectively "the Defendants") pursuant to 42 U.S.C. § 1983. At all relevant times, Defendant Shawn Purrell ("Purrell") was the Vice Principal at Hardie's school, and Defendant Gregg Malkovich ("Malkovich") was a CCSD Assistant Superintendent. (Doc. #1 at 2.)

The events underlying this lawsuit are not in dispute. On April 20th, 2007, during a school-sponsored choir trip to San Francisco, California, one of the students discovered a knife

on the floor of the bus and turned it over to the bus driver. (Doc. #18 at 3.) After hearing a description of the knife, Hardie informed the bus driver that he thought the knife belonged to him and identified it as such. (*Id.*) The bus driver turned the knife over to Vice-Principal Purrell, who spoke with Hardie the following day and indicated that the matter would be resolved when they returned to Fallon. (*Id.* at 4.) Purrell also checked Hardie's belongings for other weapons. The remainder of the trip passed without incident.

The following school day, Purrell suspended Hardie for ten days and made a recommendation to the school superintendent that Hardie be expelled for the remainder of the school year. (*Id.*) Purrell drafted a letter to Plaintiff describing the school district policy against weapons and explaining how Hardie violated the policy. The letter also noted that if the superintendent concurred with Purrell's recommendation, the Hardie would be entitled to a hearing where he could show cause why his penalty should be reduced. (*Id.* at Ex. #2.)

At a meeting with Hardie and his parents on April 25th, 2007, Malkovich provided them with a copy of all policies and statutes relevant to Hardie's expulsion. (*Id.* at 5.) This included documentation explaining the procedures that would be used before a Disciplinary Hearing Panel and Hardie's due process rights with respect to being represented by an attorney, presenting evidence or witnesses, and cross-examining adverse witnesses. (*Id.* at Ex. #4.)

The Disciplinary Hearing Panel, held two days later, consisted of three representatives from the CCSD. At the beginning of the hearing, one of the representatives read aloud the administrative regulation providing the due process requirements applicable to the proceedings. Purrell and Kris Alexander, the school's police officer-liaison, testified on behalf of the District. Hardie testified that the knife had mistakenly ended up in his belongings. The Hardies posed questions to Alexander and Purrell and explained their position that their son should not be expelled because he had not been a disciplinary problem before and because the bringing of the knife had been unintentional. They did not present any evidence.

/ / /

1    The panel recommended that Hardie be expelled for the remainder of the school year
2 and submitted their findings to Superintendent Malkovich, who forwarded them a copy of the
3 report. (*Id.* at Ex. #6.) Malkovich's letter also indicated that the high school's recommendation
4 and the panel's findings would be submitted to the Board of Trustees on May 10th, 2007, and
5 that the Hardies could be present at the meeting but that the Board may or may not choose to
6 give them an opportunity to make a statement. The letter also provided that the Hardie's could
7 submit a written statement to accompany the recommendation if they so wished, though they
8 chose not to do so. (*Id.* at 6.)

9    On May 10, 2007, the CCSD Board of Trustees reviewed the findings of the Disciplinary
10 Hearing Panel. This occurred as a closed session which the Hardies were not permitted to
11 attend, though they were present outside of the meeting room. (*Id.* at 6.) At some point during
12 the hearing, Malkovich, who was attending the closed session, left the room and asked the
13 Hardies if they had any additional information to the present to the Board. The Hardies
14 declined. The Board accepted the recommendation for Hardie's expulsion for the remainder
15 of the school year by a 4-2 vote. (Doc. #22, Ex. #6 [meeting minutes].)

16    Plaintiff's complaint pleads two claims for relief. The first alleges a violation of Hardie's
17 right to a free public education as secured by the Due Process Clause of the Fourteenth
18 Amendment and the Nevada Constitution. The second claim for relief is based on a theory of
19 negligent supervision and training. Plaintiff seeks injunctive relief, compensatory damages,
20 punitive damages, and costs. (Doc. #1.) Defendants move for summary judgment on all
21 claims, arguing that there has been no due process violation, there is no evidence to a support
22 a theory of § 1983 municipal liability, and that punitive damages are not a cognizable remedy
23 in this action.

## II. STANDARD FOR SUMMARY JUDGMENT

25    The purpose of summary judgment is to avoid unnecessary trials when there is no
26 dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18
27 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving

3

party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,

4

477 U.S. at 323.

## III. DISCUSSION

I.  PROCEDURAL DUE PROCESS

The Supreme Court has consistently held that some form of hearing is required before an individual is deprived of their liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. "Due process… is not a technical conception with a fixed content unrelated to time, places and circumstances…. Due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at 334. Informal procedures may be sufficient where the possible penalties are mild; conversely, more formal proceedings may be necessary where severe penalties may attach. *Gonzales v. McEuen*, 435 F.Supp. 460, 466 (C.D.Cal. 1976).

Children possess a property and liberty interest in attending public school. *Goss v. Lopez*, 419 U.S. 565, 565, 95 S.Ct. 729, L.Ed.2d 18 (1976). Such an interest can derive from state law where, as here, the state constitution establishes an education system for children. *See Bd. of Regents v. Roth*, 408 U.S. 564, 566 (1972). The Nevada Constitution provides for a "[u]niform system of common schools" for children to attend, as its framers "believ[ed] strongly that each child should have the opportunity to receive a basic education." Nev. Const. Art. 11, § 2; *Guinn v. Legislature of State of Nev.*, 119 Nev. 460, 475, 76 P.3d 22, 32 (Nev. 2003). Moreover, the fact that school attendance is mandatory in Nevada means that children have a property interest in continued enrollment. Nev. Rev. St. § 392.040; *Goss*, 419 U.S. at 574, (construing Ohio law mandating public school attendance as creating a property interest in public education). Accordingly, the state may not take away this right absent fundamentally fair procedures. *Goss*, 419 U.S. at 574. In this case, Hardie clearly possessed a property right in continuing to receive his education for the rest of the school year, and his expulsion constituted a deprivation of this right. The dispute thus centers on what process was due to

him under the U.S. Constitution.[1] In the absence of a factual dispute as to any material aspect of the proceedings, only a legal question remains as to whether the process was sufficient to pass constitutional muster.

In *Goss v. Lopez*, the Supreme Court considered what process was due in the context of short-term school suspension. 419 U.S. at 581, 95 S.Ct. 729. For temporary exclusions from school for ten days or less, the school must provide "rudimentary precautions" to avoid mistaken or arbitrary suspensions. *Id.* at 581, 95 S.Ct. 729. The student must have oral or written notice of the charges and, if the student denies them, an explanation of the evidence and an opportunity to present his or her side of the story. *Id.*

In this case, Hardie's punishment was significantly greater than the discipline at issue in *Goss v. Lopez* because he was expelled for the remainder of the school year. Given the greater impact on one's liberty and property interests, the Supreme Court noted that "[l]onger expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 95 S.Ct. 729. This Circuit has required the added procedural protections of being represented by counsel, presenting witnesses, and cross-examining adverse witnesses for expulsion-related proceedings. *Black Coal. v. Portland Sch. Dist. No. 1*, 484 F.2d 1040, 1044 (9th Cir. 1973); *Gonzales*, 435 F.Supp. at 467 (holding that *Goss v. Lopez* "clearly anticipates" the same procedural protections for expulsion proceedings). *Compare Lamb v. Panhandle Comm. Unit. Sch. Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987) (when expulsion is involved, "the school authority must afford the student an opportunity to present evidence and argument in mitigation.")

There is no dispute that Hardie's hearing before the three-member disciplinary panel met the heightened requirements for expulsion proceedings. At a conference prior to the panel hearing, Malkovich gave Hardie's parents a copy of the administrative regulations which

---

[1] Plaintiff also pleads her claim under the Nevada State Constitution. Like its federal counterpart, the Nevada Constitution guarantees that a person must receive due process before the government may deprive her of property. Nev. Const. art. 1, § 8(5). The court's analysis will focus on the federal Constitution, which establishes the minimum requirements for a procedural due process deprivation.

6

outlined the following procedures:

> E. All hearings shall be conducted as follows:
>
> 1. Hearings shall be closed to the public as stipulated in NRS 392.467 subsection 3;
>
> 2. No evidence shall be offered against a student unless prior to the hearing, the student is allowed to inspect written evidence and is informed of the names of witnesses against him, if so requested by the student or his parents or guardians;
>
> 3. All parties shall have the right to present evidence, call witnesses, cross-examine adverse witnesses and submit rebuttal evidence;
>
> 4. The student shall have the right to be represented by an advocate of his choice (including counsel);
>
> 5. The student shall have the right to confront any witness against him;
>
> ...

(Doc. #18, Ex. #4.) Additionally, these rights were read to the Hardies at the beginning of the hearing. After reviewing a recording of the panel hearing, the court finds no evidence that these procedures were not followed or that the Hardies were deprived of an opportunity to present their case. Neither does Plaintiff argue that she was denied any such right.

Rather, the crux of Plaintiff's claim is that Hardie did not receive a fair hearing when the panel's recommendation was reviewed by the School Board in a closed session. That argument is not persuasive. The Hardies had an opportunity to present their case before an impartial disciplinary panel which conducted a full hearing regarding the disciplinary infraction. This provided the Hardies a "meaningful" opportunity to argue that Geoffery Hardie should not be expelled, and all the required procedural protections were followed at the hearing. The panel was authorized by the administrative regulations to make a final decision regarding the expulsion since it may "take such disciplinary action, as it may deem appropriate."[2] (Doc. #18, Ex. #4, at 3.) For reasons unknown, the panel submitted its decision as a recommendation to

---

[2] Plaintiff argues that the Board is the final decisionmaker on expulsions pursuant to Administrative Regulation 5135.2(c). That regulation provides only that "the Superintendent may recommend to the Board of Trustees the expulsion of a student." *See* Doc. #22, Ex. #4. It says nothing about whether the Board has final authority in this capacity. Neither does it mention the panel hearing process at issue in this case.

7

the School Board for review rather than making a final decision.[3]  But Plaintiff cites to no authority, and the court has found none, that would suggest Hardie was entitled under the Fourteenth Amendment to a subsequent opportunity to be heard during the review process. The fact that Hardie could not appeal his case to the Board or reargue its merits does not mean that he was deprived of a fair opportunity to prove his innocence in the first instance.  *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 921 (6th Cir.1988) ("A student faced with expulsion has the right to a pre-expulsion hearing before an impartial trier-of-fact — he does not have the right to a full-blown administrative appellate process.") (citing *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260 (5th Cir.1985)).

Plaintiff argues that the Board hearing was fundamentally unfair because Malkovich — the proponent of his expulsion — was present while the Board was deliberating and could introduce previously undisclosed evidence. Any possibility that the Board's deliberations could have been so prejudiced is unlikely given that Hardie admitted to the conduct for which he was disciplined. Therefore, it is unclear what additional evidence Malkcovich could have presented to affect the Board's decision, and Plaintiff identifies none.  Moreover, other circuits have held under similar circumstances that a school administrator involved with initiating charges may participate in the deliberations, reasoning that due process requires an impartial decisionmaker but not a full adversarial process.  *See Newsome*, 842 F.2d at 927 (citing *Brewer v. Austin Indep. School Dist.*, 779 F.2d 260 (5th Cir.1985) (school administrator not disqualified from conducting a hearing on charges that he initiated)).  This is especially true given that it is the School District itself, and not a third party, that conducts the hearings and makes the decision regarding punishment in these cases.  Moreover, Hardie had the opportunity to submit a written statement to be included with the panel's recommendation when it was submitted to

---

[3] While there is a colorable argument that this constituted a departure from the applicable administrative regulations, the failure to follow state or local regulations does not ordinarily establish a procedural due process violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540-41, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Goodisman v. Lytle*, 724 F.2d 818, 820 ("Procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest.").

8

the Board, as well as to address the Board if he had any new evidence he wished to present. (Doc. #18, Ex. 6 [letter to Hardie's parents].)  Absent evidence of preexisting animus or motivation for Malkovich to inflict an unjust punishment on Hardie, the court finds no due process infirmity with these proceedings.

The procedures used for Hardie's expulsion can also be analyzed according to the general balancing test found in *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. 893. According to this standard, the court must weigh the following to determine what process is required under the Fourteenth Amendment: (1) the interest that will be affected by state action, (2) the risk of erroneous deprivation of this interest through procedures used by state and probable value, if any, of additional procedural safeguards, and (3) the state's interest, including fiscal and administrative burdens that additional procedure would entail. *Id.*

Under the first *Mathews* factor, there is little question that Hardie had an important interest in not being expelled and attending the remainder of his junior year of high school. Expulsion is a punishment of last resort that may affect Hardie's standing among his teachers and peers or interfere with later opportunities for education and employment. *See Goss*, 419 U.S. at 575, 95 S.Ct. 729.  As discussed above, Hardie has a legitimate claim of entitlement to a public education under the Nevada Constitution and state law. Accordingly, this factor favors the formality of proceedings used to determine Hardie's punishment.

The second *Mathews* factor is the risk of an erroneous deprivation of Hardie's interests. "Central to the evaluation of any administrative process is the nature of the relevant inquiry." *Mathews*, 424 U.S. at 343, 96 S.Ct. 893 (citing *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 617, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406 (1974))  Here, an additional hearing before the Board would have negligible probative value because the circumstances underlying the punishment are not contested by the parties – Hardie admitted to bring the knife onto the bus, albeit by accident.  His intent did not matter, however, because the disciplinary policy followed by his high school treats possession of a weapon as a strict liability offense that results in either a mandatory suspension or expulsion.  *See* Doc. # 18, Ex. #5 [Administrative Regulation R5135.2(C)] ("Pursuant to N.R.S. 392.466, any student who is found in possession of a

9

dangerous weapon while on school property, must for the first occurrence, be suspended or expelled from the school for a period not less than one (1) year...."). Therefore, given that the parties generally agreed to the conduct underlying his offense, the only question remaining was whether Hardie should receive the stricter (expulsion) or more lenient (suspension) punishment. Neither outcome was less or more correct than the other because selecting the punishment was up to the discretion of the panel members, and Plaintiff argues no defect with the hearing that would need to be corrected by the School Board. Therefore, granting Hardie another opportunity to address the Board would do nothing to mitigate the risk of an "erroneous" deprivation, especially when he had the opportunity to present new evidence and submit a written statement. Of course, rearguing his case to a different set of factfinders might have led to a different decision regarding Hardie's punishment[4], but that does not mean that he was deprived of the protections of the Fourteenth Amendment. As a result, the probable value of the subsequent hearing second full hearing is marginal.

The final *Mathews* factor is the state's interest. The Board is a governing body responsible for promulgating policies for schools within the CCSD. Requiring the School Board to conduct a second hearing regarding Hardie's expulsion would exact a substantial administrative burden. Determining the appropriate punishment is a fact-intensive process requiring the Board to hear witnesses and consider evidence before engaging in deliberations. This would necessarily divert the Board's time and attention from other pressing matters more central to its primary purpose.[5] Therefore, there is a legitimate state interest in not requiring to Board to conduct expulsion hearings anew following a similar hearing by a disciplinary panel.

After considering these factors, the court finds that the process used for Hardie's expulsion proceedings struck the proper balance between administrative efficiency and

---

[4] The panel voted unanimously to expel Hardie. The School Board affirmed the decision on a 4-2 basis. Plaintiff speculates that had a full hearing been permitted, he could have changed the mind of one of the board members and prevented his expulsion.

[5] The record suggests that expulsions are not uncommon occurrences within the CCSD, as the Board reviewed two other expulsions along with Hardie's at its meeting. (Doc. #22, Ex. #6, at 7-8.)

protecting Hardie's interest in attending school. The benefit of an additional full hearing to ensure that Hardie's punishment was just was outweighed by the cost imposed on the limited resources of the School Board, which is part of a public institution. While Hardie received a severe punishment for what may have been an innocent mistake, CCHS school administrators likely adopted their zero tolerance policy as a result of a rising tide of violence in our public schools. *See Miller ex rel. Miller v. Penn Manor School Dist.*, 588 F.Supp.2d 606, 616-17 (E.D.Pa. 2008) (describing five "truly horrific acts" of violence involving weapons in public schools). The procedures used at Hardie's hearing provided him a meaningful opportunity to be heard, and the Constitution does not require any more than this. Accordingly, the motion for summary judgment with respect to the procedural due process claim is granted.

II. § 1983 MUNICIPAL LIABILITY

Plaintiff argues that the municipality should be liable for the Board's violation of Hardie's due process right due to a failure to train or adequately supervise school district personnel. Having found there has been no deprivation of Hardie's constitutional rights, the court dismisses this claim.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #18) is **GRANTED**.

**LET JUDGMENT ENTER ACCORDINGLY.**

DATED: March 30, 2009.

_____
UNITED STATES MAGISTRATE JUDGE